## Commonwealth ex rel. Myers v. Shearer, Keeper, etc.

*Criminal law—Commutation of sentence—Pardon—Fine—Act of May 11, 1901—Constitutionality.*

1. A commutation of a sentence, without more, is not a pardon.

2. If a prisoner has been sentenced to fine and imprisonment as provided by the Act of May 11, 1901, P. L. 166, he cannot be released until he has paid his fine or served three months' additional imprisonment to enable him to take advantage of the insolvent laws.

3. Where costs are not remitted by the commutation, payment of the costs after the date of filing a petition for discharge will not entitle the petitioner to discharge. He must institute a new proceeding after payment of costs.

*Quære.* Is the Act of May 11, 1901, P. L. 166, constitutional?

Petition for writ of *habeas corpus.* C. P. Cumberland Co., May T., 1925. No. 384.

*Vale, Caldwell & Bowman,* for petitioner; *J. E. Myers,* for respondent.

BIDDLE, P. J., April 18, 1925.—On April 11, 1925, the relator, Park Myers, presented his petition, averring that he was illegally in the custody of the keeper of the Cumberland County Prison and unlawfully restrained of his liberty, and praying the court to issue a writ of *habeas corpus* for his relief, agreeably to the act of assembly in such case made and provided. The writ

was granted on the same day, returnable Tuesday, April 14, 1925, at two o'clock P. M., at which time the respondent appeared with the relator; the respondent having filed a return, setting out that the relator was lawfully restrained by virtue of a commitment issued to the respondent by Austin B. Hertzler, Clerk of the Court of Quarter Sessions of Cumberland County, on March 31, 1924, a copy of the commitment being attached. At the hearing it appeared that the relator had been found guilty of a violation of the Enforcement Act of this State, and, on March 31, 1924, was sentenced to pay a fine of $400, to pay the costs of prosecution and to undergo an imprisonment in the Cumberland County Jail for the period of fifteen months and stand committed until the sentence was complied with. It further appeared that the relator had applied for a commutation of his sentence, under the provisions of the Act of May 11, 1901, P. L. 166; that the Board of Pardons had recommended a diminution of his sentence, and that the Governor had issued a warrant, which had been duly served on the respondent, ordering and directing that the relator should have the benefit of the provisions of the Act of May 11, 1901, aforesaid, and directing that the relator should be discharged from confinement on April 8, 1925. It appeared that the relator had not paid the fine imposed, nor had he paid the costs, or any part thereof; but, during the hearing, he tendered and paid in full the costs which he had been sentenced to pay by the court in the sentence imposed on March 31, 1924.

It was admitted by the learned counsel for the relator that the payment of the costs was not remitted by the action of the Board of Pardons and the Governor, and from this it appeared that at the time the relator's petition was presented and the pending writ awarded, he was not illegally restrained of his liberty, and this might justify a discharge of the pending rule compelling the relator to institute a new proceeding. No good purpose would be served by this, however, and as the other question involved, to wit, the right of the relator to a discharge from confinement without having paid his fine and without having served the three months which would be requisite to enable him to take advantage of the insolvent laws, is an important one, and does not appear to have been passed upon heretofore by any of the courts of this State, we think it advisable to disregard any technicality and to pass upon the question on its merits.

The learned counsel for the relator and the district attorney both stated that, after a careful search, they had been unable to find any determination of any court of this State in regard to the effect of an action under the Act of May 11, 1901, P. L. 166, on a fine imposed, where such fine was imposed as a part of the sentence; but the relator relied upon an opinion of Attorney-General Elkin as to the constitutionality of the said act and another opinion of Attorney-General Todd as to its effect. Personally, we feel that there is great doubt of the constitutionality of the Act of 1901, above mentioned. While it is true, as pointed out in the opinion of Attorney-General Elkin, Construction of Act of May 11, 1901, 10 Dist. R. 361, that the procedure provided is in accordance with the constitutional provisions in regard to the granting of pardons and the commutation of sentences, yet it seems to us that that portion of section 5 of the Act of 1901 which provides that "the Governor may, in his discretion, decrease or increase the amount of commutation as recommended by the said board, *but he shall not increase the same beyond the amount fixed by this act,*" imposes a restriction upon the constitutional power of the Governor in a manner which we regard as clearly beyond the power of the legislature. On the other hand, if action by the Governor and by the Board of Pardons in the case is to be disregarded, then the act in question would appear to be open

to the same objection that was urged against the preceding Act of May 1, 1861, P. L. 462, which, in the case of Com. ex rel. v. Halloway, 42 Pa. 446, was held to invalidate the earlier act. As far as the question at present involved is concerned, however, we regard it as immaterial whether the Act of 1901 is or is not constitutional.

The learned counsel for the relator contended that a commutation of sentence was, in all respects, the equivalent of a pardon, and that, this being the case, the effect here would be the same as that of a pardon, and that the relator would be released and discharged from any obligation to pay the fine imposed by the sentence of the court. If the premises of the learned counsel's contention are correct, his conclusion logically and properly follows, because it must be admitted, we think, under the authorities, that the effect of a pardon is to release and discharge the criminal from every part of his sentence (in so far as the State alone is concerned therein) that had not already been performed. We are unable, however, to agree with his contention that a commutation of sentence and a pardon are identical. No authorities were cited in support of his contention on this point, and, so far as we have been able to find authorities on it, they rule directly against his contention. The provisions of section 9 of article IV of the Constitution of this State appear to us to negative his contention; that section providing that: "He (the Governor) shall have power to remit fines and forfeitures, to grant reprieves, *commutations of sentences* and pardons, except in cases of impeachment; but no pardon shall be granted *nor sentence commuted*, except upon the recommendation in writing," etc. Why these different words should be repeated, if there was no difference in meaning, we are unable to understand. The question has been definitely ruled elsewhere. Thus, in the case of Re Victor, 31 Ohio State, 206, 207, it was said: "A commutation is *not* a conditional pardon, nor is it simply the substitution of one punishment for another. In its legal acceptation, it is a change of punishment from a higher to a lower degree in the scale of crimes and penalties fixed by the law, and is presumed, therefore, to be beneficial to the convict. It is an act of executive clemency, equally as a pardon, only in a less degree." In another case it was said: "His (the governor's) power of commutation, however, acting on the original sentence of the court, cuts down and modifies that sentence. . . . The commutation does not annul the sentence of the court, but is *pro tanto* an affirmance of it with a modification:" Ex parte Collins, 6 S. W. Repr. 345.

And our highest court has said: "It may be conceded that there is a technical difference between the commutation of a sentence and the mitigation thereof. The first is a *change of a punishment* to which a person has been condemned into one less severe, substituting a less for a greater punishment by authority of law. To mitigate a sentence is to reduce or lessen the amount of the penalty or punishment:" Mullan v. United States, 212 U. S. 516, 521.

We feel, in view of these authorities, that the provisions of the Act of May 11, 1901, under which the relator is here claiming, provide for a mitigation of the sentence and not for a pardon, and that the warrant of the Governor, under the provisions of that act, cannot, without more, be given the effect of a pardon, full or conditional. If the act in question is constitutional and the action of the Board of Pardons and of the Governor should be considered as taken merely in pursuance of that act, it follows, we think, that, as the act itself provides, they may do nothing beyond what is there directed. The act directs merely a cutting off of a portion of the term of imprisonment. It makes no reference whatever to the disposition of the fine imposed, and its failure to make any provision in regard to the fine is tantamount to providing

Commonwealth ex rel. Myers *v.* Shearer, Keeper, etc.

that the liability for its payment shall remain unaffected. The section of the act which we have quoted above provides that the Governor may not go beyond the diminution therein provided for, and if the act is a valid one, any action of the Governor beyond that would be a nullity, and it would follow that, until the fine was paid, the direction of the Governor for the discharge of the relator would have to be disregarded, just as it would have had to be disregarded until the costs imposed had been paid. On the other hand, if it should be held that the Act of May 11, 1901, P. L. 166, was unconstitutional and the action of the Governor was to be treated as an exercise merely of his constitutional prerogative, then it would also follow that the exercise of that prerogative would be limited as provided in the section of the Constitution quoted above. Under that section the Governor could go only as far as the written recommendation of the Board of Pardons suggested, and the warrant of the Governor, which was served upon the respondent and which was offered in evidence, sets out that the proceeding was under the provisions of the Act of May 11, 1901, and that the Board of Pardons "have recommended to me, in writing, commutations and diminutions of sentences to be allowed, . . ." and that the Governor "hereby orders and directs that the following named and described prisoners shall have such benefit of the provisions of the aforesaid act of assembly as is hereinafter set forth, and that there shall be deducted from the term of the sentence of the said prisoners the time set opposite their names." Our understanding of this is that the Board of Pardons recommended, in writing, to the Governor a diminution of the sentence of the relator to the extent provided in the Act of 1901, and recommended nothing more; that the extent of their recommendation is the limit of the Governor's power to commute, and that the recommendation and warrant being wholly silent in regard to the fine, and a commutation not being the equivalent of a pardon, the liability of the relator to pay the fine before discharge from prison was not in any manner affected.

This determination is not necessarily in conflict with the opinion of Attorney-General Todd, reported in Commutations and Fines, 18 Dist. R. 737; for an examination of that opinion indicates that the Attorney-General was there commenting on the effect of a warrant issued by the Governor which was apparently in a different form from the one before us. For, in that opinion, the Attorney-General states: "The commutation in question is that the sentence shall be 'commuted and diminished' so that the prisoner shall be 'released and discharged' from the remainder of his 'sentence.'" No such language appears in the warrant before us, and as that language was the basis of the opinion of the learned Attorney-General that what was there done was the equivalent of a pardon, we think his opinion does not apply to the present case. If it were otherwise, however, we should feel obliged, however reluctantly, to dissent from his reasoning and conclusion.

The relator will be entitled to his discharge from imprisonment at any time that he pays the fine imposed, or, failing such payment, he may apply hereafter for a discharge under the provisions of the insolvent laws.

And now, April 18, 1925, the writ in this case is discharged, at the cost of the relator and the relator is remanded to the custody of the sheriff.

From Francis B. Sellers, Carlisle, Pa.